# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERONICA D.[1], | CIVIL ACTION NO. 1:24-cv-01326 |
| Plaintiff, | |
| v. | (Magistrate Judge Latella) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying plaintiff Veronica D.'s claims for a period of disability and disability insurance benefits ("DIB") under Title XVI of the Social Security Act. (Doc. 1). Both parties have consented to a Magistrate Judge conducting all proceedings in the case. (Doc. 7). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be **AFFIRMED**.

---

[1]To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.  See *Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

## I.    Background and Procedural History

On August 6, 2021, Plaintiff Veronica D. filed an application for Title XVI disability benefits. (Doc. 1 at ¶ 5). In this application, Veronica D. claimed disability beginning July 4, 2021. (*Id.*). The Social Security Administration initially denied Plaintiff's claims on January 27, 2022. (*Id.* at ¶ 6). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on January 17, 2023. (*Id.* at ¶ 7). ALJ Timothy Wing conducted the requested hearing on September 26, 2023. (*Id.* at ¶ 8).

In a written opinion dated November 22, 2023, the ALJ determined that Plaintiff is not disabled and therefore not entitled to the benefits sought. (*Id.* at ¶ 9). Plaintiff appealed the ALJ's decision to the Appeals Council, which, on June 7, 2023, denied Plaintiff's request for review. (*Id.* at ¶¶ 9–10).

On August 6, 2024, Plaintiff filed the instant action. (*See* Doc. 1). The Commissioner responded on September 25, 2024, providing the requisite transcripts from the disability proceedings on September 26, 2023. (Docs. 8 and 9). The parties then filed their respective briefs (Doc. 11; Doc. 13), with Plaintiff alleging two errors warranting reversal or remand. (Doc. 11, p. 5). After Defendant filed their response, the Plaintiff did not file a reply brief.

## II.    The ALJ's Decision

In a decision dated November 22, 2023, the ALJ determined that "the claimant has not been under a disability within the meaning of the Social Security Act since August 6, 2021, the date the application was filed." (R. 17). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520.[2]

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined that Plaintiff "has not engaged in [SGA] since August 6, 2021, the application date." (Doc. 9-2, p. 19). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does

---

[2] To qualify for disability benefits, a complainant must be insured. Neither parties' briefs nor the ALJ's decision discussed Veronica D.'s insured status; therefore, this Court will assume that her insured status is not an issue.

not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant does] not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Plaintiff has the following severe impairments: cardiovascular disorder, including coronary artery disease, supraventricular tachycardia, status post mitral valve replacement; asthma; fibromyalgia; obesity; bipolar disorder; major depressive disorder; and generalized anxiety disorder. (R. 19). The ALJ also identified Plaintiff's non-severe impairments as: hypertension, hyperlipidemia, history of Lyme disease, history of insomnia, and history of substance use disorder. (*Id.*).

At step three, the ALJ must determine whether a severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (20 C.R.F. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet those listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Plaintiff's impairments, considered individually or in combination, met or equaled a Listing. (R. 20–21). Specifically, the ALJ considered Listings 3.03 (asthma); 4.00 *et seq.*

4

(cardiovascular system, including chronic heart failure, ischemic heart disease, recurrent arrhythmias, congenital heart disease (with or without transplant), an aneurism, chronic venous insufficiency, and peripheral artery disease); 12.04 (depressive, bipolar and related disorders); and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.*). The ALJ also considered Plaintiff's fibromyalgia in accordance with the 1990 American College of Rheumatology criteria, as well as her obesity.

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ determined that Plaintiff:

> has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crawling, crouching, and climbing on ramps and stairs, but she must avoid occupations that require climbing on ladders, ropes, and scaffolds. The claimant must avoid frequent concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, excessive vibration, extreme dampness, and humidity. She must avoid frequent exposure to dangerous machinery and unprotected heights. The claimant is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes.

(R. 23).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still

perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined that Plaintiff is unable to perform her past relevant work. (R. 31). The ALJ noted past relevant work as a short order cook, but the exertional requirements exceeded her RFC. (*Id.*).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Plaintiff was 51 years old on the alleged onset date, defined as an individual closely approaching advanced age per the Regulations. 20 C.F.R. § 404.1563. (R. 31). The ALJ also noted that Plaintiff has a limited education, as considered in 20 C.F.R. § 404.1564. (*Id.*). The ALJ determined that upon consideration of these factors, Plaintiff's RFC, and the

testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*). The ALJ specifically identified occupations of stencil inspector, artificial tooth inspector, and stock checker, apparel. (*Id.* at p. 32). Furthermore, the ALJ found that "even if the claimant's ability to stand and walk were reduced to four hours in an eight hour workday," Plaintiff would still be able to perform the occupations of stencil inspector and artificial tooth inspector, and additionally that of a potato chip sorter. (*Id.*). Ultimately, the ALJ did not adopt the reduction from eight to four hours of standing and walking in his RFC. (*Id.* at 23).

As a result of this analysis, the ALJ determined that Plaintiff was not disabled, and denied Veronica D.'s application for benefits. (*Id.*).

## III.    Standard of Review

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant

7

numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are

consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Veronica D. is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.    Discussion

Plaintiff presents two arguments for review. First, she argues that a conflict exists between the RFC limitation and the occupations presented by the vocational expert (VE) and ultimately accepted by the ALJ. Because the ALJ limited Plaintiff to "simple, routine, repetitive tasks," she argues that an occupation with a

reasoning level of 2 is inherently inconsistent with that RFC limitation. If Plaintiff's argument were to be sustained, she would be unable to work any level 2 reasoning jobs. Next, Plaintiff attacks the fourth potential occupation that the VE stated at the hearing—a potato chip sorter with a reasoning level of 1. Plaintiff argues that this job is also incompatible with her RFC, due to the RFC's restriction on "fast-paced production environments." With these two arguments, Plaintiff concludes that the "Social Security Administration has failed to meet its burden of proof that the Plaintiff is capable of performing other relevant work." Because no conflict exists between the Dictionary of Occupational Titles (DOT) and the VE's testimony, and because there is no evidence that the potato chip sorter occupation is outside of Plaintiff's RFC, the Plaintiff's arguments will be rejected and the ALJ's decision will be affirmed.

### A. No Conflict Exists Between the VE's Testimony and the DOT

Plaintiff asserts that a conflict exists between the DOT and VE's testimony and that the ALJ failed to reconcile this conflict either during the hearing or in his written decision. An ALJ may rely on the testimony of a VE to aid in his or her decision. These experts are most frequently used during hearings "to resolve complex vocational issues." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p). As a general rule, the VE's occupational evidence should be consistent with the information provided in the DOT. SSR 00-4p. Accordingly, the

ALJ must ask the VE whether their testimony is consistent with that of the DOT. *Zirnsak*, 777 F.3d at 617. If any such inconsistency exists, the adjudicator must obtain a reasonable explanation for the conflict and then explain how the conflict was resolved. SSR 00-4p. If the ALJ fails to complete these steps such that an inconsistency remains, that may result in the decision being remanded. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). However, the presence of an inconsistency between the VE's testimony and the DOT does not mean that remand is a foregone conclusion: "if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result," the decision may stand. *Rutherford*, 399 F.3d at 557 (citing *Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2004)).

Plaintiff alleges a conflict between the ALJ's RFC determination and the occupations presented by the VE at the September 26, 2023, hearing. At that hearing, the VE testified that Veronica D. would be unable to perform her past position as a line cook. The ALJ inquired as to whether any other occupations existed for a person with Plaintiff's limitations, and the VE named three potential occupations: a stencil inspector, an artificial tooth inspector, and a stock checker, apparel. The ALJ added a hypothetical additional limitation of a maximum standing and walking time of four hours in an eight-hour workday, and asked whether that would change the VE's recommendations. The VE testified that with

the added limitation, Plaintiff would still be able to work as a stencil inspector and an artificial tooth inspector, but then included the occupation of a potato chip sorter as a third option. The ALJ asked whether this testimony was consistent with the DOT and related publications, and the VE answered in the affirmative. (R. 59–60).

In his written decision, the ALJ determined that Plaintiff had the capacity to perform light work, and further limited her to "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes." (R. 23). The ALJ found that jobs existed in the national economy which the Plaintiff could perform and cited to the three original occupations from the VE's testimony, all of which are reasoning level 2 jobs. The ALJ also noted that if the Plaintiff was unable to stand and walk for over four hours per day, the level 1 reasoning job of potato chip sorter would be another potential occupation. (*Id.* at 32).

Plaintiff argues the RFC limitations to "simple, routine, repetitive tasks" is inherently incompatible with a reasoning level 2 occupation. "DOT reasoning levels refer to informal and formal levels of education required for satisfactory job performance. A job's reasoning level gauges the minimal ability a worker needs to complete the job's tasks themselves." *Simpson v. Astrue*, No. CIV.A. 10-2874, 2011 WL 1883124, at *6 (E.D. Pa. May 17, 2011) (internal citation and quotation removed). A job with reasoning level 2 requires a person to "[a]pply commonsense

understanding to carry out detailed but uninvolved written or oral instructions[, and d]eal with problems involving a few concrete variables in or from standardized situations." Appendix C - Components of the Definition Trailer, 1991 WL 688702. Plaintiff focuses on the phrase "detailed" instructions, citing out-of-circuit case law finding that reasoning level 2 requires more than just following "simple" instructions, and concluding that "the Plaintiff cannot perform reasoning level 2 jobs because she was limited to simple, routine work and simple, work-related decisions." (Doc. 11, p. 8). Plaintiff does not make the argument that Veronica D. is unable to perform the four jobs suggested by the VE; instead, Plaintiff maintains that remand is warranted because the ALJ found that she was limited to "simple, routine, and repetitive" tasks and that the level 2 jobs he found that she could perform exceeded those limitations. *See Simpson*, 2011 WL 1883124, at *7. Plaintiff argues that the ALJ did not address the conflict between his findings with regard to her limitations. Plaintiff contends therefore that the ALJ's finding that she was limited to "simple, routine, and repetitive" tasks is inconsistent with his finding that she could perform certain jobs requiring a reasoning level of 2.

In response, Defendant points to a line of cases within this Circuit that hold that a limitation that work be simple, routine, and repetitive does not conflict with occupations that involve working at reasoning level 2.

The Defendant's argument and cited authority is persuasive. There is no bright-line rule stating when a *per se* conflict exists between an RFC limitation and any certain reasoning level. *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014). In *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004), the Third Circuit addressed the issue of whether a claimant is capable of performing reasoning level 2 jobs when the claimant's RFC limits their ability to perform only jobs that are simple. In *Money*, the Plaintiff was found to have an RFC for simple, routine, and repetitive work; however, five of the six potential occupations identified by the ALJ required reasoning levels of 2 or 3. The Court wrote that Plaintiff made "the assumption that even a reasoning level of 2 . . . is incompatible with the ALJ's decision in her RFC that her jobs must be simple." *Money*, 91 F. App'x at 215. The Court then plainly held that "[w]orking at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive." *Id.*

Since then, courts within this circuit have overwhelmingly held the same. *See, e.g.*, *Spallone v. Berryhill*, No. 3:17-CV-1152, 2018 WL 2771581, at *4 (M.D. Pa. Apr. 3, 2018), *report and recommendation adopted,* No. 3:17-CV-1152, 2018 WL 2770646 (M.D. Pa. June 8, 2018) (rejecting the notion that there was "an inherent and irreconcilable conflict between an RFC which finds that [a plaintiff] can perform simple routine tasks, and jobs which require work at reasoning level 2," and instead holding that because reasoning level 2 "simply requires an ability

to carry out detailed but uninvolved instructions" and only calls for a "modest level of intellectual attainment," there is no contradiction); *Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008) (RFC determination limiting plaintiff to "simple repetitive tasks" resulted in the court following *Money*'s "valuable guidance," finding there was no apparent inconsistency with an occupation of reasoning level 2 warranting remand); *Simpson v. Astrue*, No. CIV.A. 10-2874, 2011 WL 1883124, at *6 (E.D. Pa. May 17, 2011) (while "some courts have found a conflict between a VE's testimony that a claimant can perform a job with a reasoning level of 3 and an RFC limiting that claimant to simple and routine work tasks," there is a "growing consensus within this Circuit and elsewhere" that working at reasoning level 2 does not contradict the simple and routine task limitation); *L.L. v. Comm'r of Soc. Sec.*, No. 24CV09 (EP), 2025 WL 491941, at *4 (D.N.J. Feb. 13, 2025) (finding no conflict "because the word 'simple'—from the RFC—and 'uninvolved'—from the DOT's definition—both connote instructions that 'are not complicated or intricate." (internal quotation removed)); *Roecker v. O'Malley*, No. 3:24-CV-47, 2024 WL 3362284, at *10 (M.D. Pa. July 10, 2024) ("We are also constrained to observe that courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited the claimant to simple tasks and restricted the

claimant's interaction with others."); *David D. v. O'Malley*, No. 3:22-CV-6413, 2024 WL 4635305, at *14 (D.N.J. Oct. 31, 2024) ("Nor can the Court conclude that a mental limitation to 'simple, routine tasks and . . . simple work-related decisions' is inconsistent with the DOT definitions for routing clerk and laundry worker, occupations that require reasoning level 2. The Third Circuit has held that a job with a reasoning level 2 does not 'contradict the mandate that [the claimant's] work be simple, routine and repetitive.'" (internal citation removed)).

*Zirnsak v. Colvin* questioned whether "an inherent conflict exists between a job requiring level 3 reasoning and a finding that a claimant should be limited to simple, routine tasks," and described the differing opinions amongst circuits. 777 F.3d 607, 618 (3d Cir. 2014). Several courts, including district courts within this circuit, have found that there is not a *per se* conflict between level 3 reasoning and a limitation to simple and routine tasks. Important to this case, however, is that the courts that have found such an inconsistency instead concluded that claimants with limitations to "simple, repetitive tasks are better suited for jobs that require level 2 reasoning." *Id.* Given that courts have found that no *per se* conflict exists between reasoning level 3 and simple, repetitive tasks, the Plaintiff's argument that a reasoning level 2 job is inherently incompatible with her RFC is therefore unpersuasive.

In additional support of her argument that she cannot carry out level 2 reasoning tasks, Plaintiff cites to an opinion in the record of Erin Urbanowicz, Psy.D., who assessed the Plaintiff in October 2022 and concluded or opined that "claimant can make simple decisions" and "carry out very short and simple instructions." (R. 75). She also found that "the claimant is able to meet the basic mental demands to complete 1-2 step tasks on a sustained basis despite the limitations resulting from her impairment. The claimant can understand, retain, and follow instructions." (*Id.*).

While the ALJ did find that opinion generally persuasive, he specifically found that the "opinion regarding one- to two-step tasks is not fully supported." (R. 30). He further found that Plaintiff's testimony "suggests greater capabilities than just one- or two-step tasks." (*Id.*). This indicates that the ALJ considered the opinions of the consultants but chose not to include this limitation in the RFC and explained that decision. The fact that the ALJ ultimately did not include the one- to two-step limitation supports his finding that plaintiff would be able to perform an occupation requiring reasoning level 2. Neither case law nor the record supports the notion that there is an inherent conflict between the VE's testimony and the DOT's description of the jobs that the ALJ found that Plaintiff could perform.

**B. The Potato Chip Sorter Is Within Plaintiff's RFC**

As noted *supra*, the VE referenced the job of potato chip sorter as a viable occupation if Plaintiff were further limited to standing and walking for a maximum of four hours per day. It should be noted at the outset that the ALJ did not ultimately make a determination that Plaintiff was limited to a maximum of four hours of walking and standing per day, but nevertheless proposed the limitation in the hypothetical.

Plaintiff maintains that she could not perform the job of potato chip sorter because the ALJ's RFC includes that she is not to perform work "in a fast-paced production environment," (R. 23), and that the potato chip sorter job would require working in such an environment. In her brief, Plaintiff points to the DOT's definition of potato chip sorter which describes the job as someone who "observes potato chips on conveyor and removes chips that are burned, discolored, or broken." (Doc. 11, p. 9).  Plaintiff concludes: "This is clearly a fast-paced production position which is contrary to the ALJ's RFC." (*Id.*). However, there is no evidence of record to support that conclusion. Despite there having been an opportunity to do so, no inquiry was made to the VE during the September 26, 2023, hearing regarding the details of a potato chip sorter's workplace environment. Defendant, accordingly, responds that Plaintiff waived the argument, since it was not adequately developed or raised at the hearing. (Doc 13, p. 10).

19

It cannot be said that substantial evidence does not support the finding that the potato chip sorter position falls within Veronica D.'s RFC. Moreover, even if the potato chip sorter position were removed, the ALJ still presented three other viable alternate occupations, each with tens of thousands of positions in the national economy. *See Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]he District Court correctly noted that there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act. *See* 20 C.F.R. § 404.1566. However, the testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers").

Lastly, Plaintiff adds that if there were a limitation of four hours of standing and walking per day imposed – which had been discussed at the hearing, and presumably the reason why the potato chip sorter was brought into the fold – that it "would dictate a finding of disabled pursuant to the Medical Vocational Guidelines if she is only capable of [sedentary] work."[3] (Doc. 11, p. 9). However, as discussed, while the ALJ poses a hypothetical, he did not find a limitation regarding walking and standing. The RFC determination made by the ALJ, which is supported by substantial evidence of record, indicates that Veronica D. can

---

[3] The brief originally states, "…if she is only capable of light work." This is presumably scrivener's error.

perform light work with only occasional postural maneuvers so long as it does not involve fast-paced production or complicated work decisions. Therefore, what her grid would be if she were limited to sedentary work is not relevant to this inquiry.

For the reasons explained above, the Court concludes that the ALJ's decision is supported by substantial evidence, The ALJ did not err when he concluded that, despite her severe impairments, Veronica D. has the residual capacity to perform some jobs available in the national economy and is therefore not disabled. The ALJ's decision will be **AFFIRMED.**

For the reasons set out above, we conclude Plaintiff's appeal of the Commissioner's decision (Doc. 1) is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

Dated: September 17, 2025                    **/s/ Leo A. Latella**
                                             Leo A. Latella
                                             United States Magistrate Judge